IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| ROGELIO MUNOZ | § | |
|---|---|---|
| v. | § | CIVIL ACTION NO. 6:07cv170 |
| DAVID FORTNER, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Rogelio Munoz, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in this proceeding pursuant to 28 U.S.C. 636(c).

An evidentiary hearing was conducted on August 2, 2007, pursuant to Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). At this hearing and in his complaint, Munoz says that he is a paraplegic, and that he entered prison in that condition. He stated that he has diabetes, neurological problems in his arms, MRSA (an antibiotic-resistant staph infection), hepatitis C, incontinence, and high blood pressure.

On August 16, 2006, Munoz says that he came up with a lesion or boil, and a culture was taken the next day. He told David Fortner, a physician's assistant, that he did not want any oral antibiotics, such as clindamycin or doxycycline, and he signed a refusal of treatment form for oral antibiotics. When he did, the nursing staff told him that he would get a disciplinary case for refusing the treatment, and Munoz replied that he would refuse oral antibiotics until the result of the culture came back from the lab, to see if he had MRSA.

Munoz acknowledged that he did not receive a disciplinary case, but he was shown a paper from Fortner saying that if he refused treatment, he would be put into an isolation cell. He stopped signing the refusals and took the medication, which he said caused him to suffer nausea.

Munoz explained that he had experienced outbreaks of MRSA several times. He said that it starts out as a painful boil which can be anywhere on the body. The treatment is antibiotics, squeezing out the pus, and warm compresses. He said that his infection became resistant to antibiotics and so it was treated with intravenous doses of a medication called vancomycin.

Next, Munoz complained about the shower policies. He says that on January 14, 2007, he sent an I-60 inmate request form to Fortner complaining that the shower rules had been changed and that he needed Fortner to intervene. This request was returned to him with the message that he should talk to the warden or captain.

According to the Inmate Orientation Handbook, Munoz says, inmates are to shower one time per day, except that paraplegic inmates may shower whenever necessary, as determined by the health services department. He says that Warden Blevins and Captain Atwood changed the policy without consulting the medical department.

Munoz said that there were two showers in 15 and 16 Dorms. A rule was posted saying that showers would only be run from 6:30 to 9:30 a.m. and that inmates were limited to seven minutes for a shower. Munoz stated that it was not physically possible for him to shower in seven minutes because he has to turn in his ID card, go to his cubicle, get undressed, take his shower, get dressed, and turn in the shower hose, all in seven minutes.

Munoz stated that he has a Foley catheter (a thin rubber tube with a balloon on the end, placed into the bladder to drain urine). He says that sometimes it bleeds and sometimes he has "accidents." On February 9, 2007, Munoz received a notice signed by Warden Blevins which said that if an emergency arises, such an inmate soiling himself, a supervisor will be notified to get permission to send the inmate to the main showers. However, Munoz says, forcing him to roll his wheelchair down the hall to the main showers after he has soiled himself would subject him to

"laughs, jokes, stares, and humiliation" from staff and inmates alike, and is unnecessary because there are showers in the dorm where he lives. He said that he has sometimes been allowed to go to the main shower, but that once Officer McKnight would not allow him to do so.

Munoz says that when he arrived at the Powledge Unit, he had problems getting supplies. He stated that the supplies have been intermittent, stopping and starting. The last time he saw medical personnel, he says, they ordered seven diapers for him for a week. Munoz also raised other complaints, including assertions that non-handicapped inmates do not have to turn in their ID cards for a shower hose, only two to four wheelchair-bound inmates are let out at a time, while general population inmates all go to the dayroom at once, there is no craft shop for the handicapped inmates, and the inmates in his dorm have to dispose of hazardous trash in regular trash cans.

Turning to the Defendants in the case, Munoz stated that Fortner had been indifferent to his needs. He said that he sent a sick call request asking about his diapers, and received a response saying that he had never requested diapers, along with the word "interesting," which Munoz said was "unprofessional," particularly inasmuch as he had requested diapers since arriving at the unit. He also complained that Fortner had threatened to lock him up if he did not take oral antibiotics, and that Fortner said that he, Munoz, would not be a threat to others if Munoz took the oral antibiotics, but Munoz said that this was incorrect because if he had MRSA, it would be resistant to anything except vancomycin.

Next, Munoz complained that Warden Blevins and Captain Atwood changed the shower rules. He said that Dr. Clayton would not answer his inmate request forms, and that Beverly Parker, the unit safety officer, improperly verified that the shower policy did not violate unit safety rules or the Americans with Disabilities Act. Munoz says that this was incorrect because the shower hose used by handicapped inmates is heavy enough to be used as a weapon, and because he could slip and fall as a result of the seven-minute rule.

Finally, Munoz raised other, more general complaints, including assertions that handicapped inmates did not have a craft shop, there is no doctor at the Powledge Unit but only a physician's

assistant, the unit has "small halls and dayrooms," and there is no counselor for the Physically Handicapped Offender Program assigned to the Powledge Unit. For relief, Munoz seeks punitive damages, an injunction directing that he receive medical supplies, and an order that he be treated by a doctor, apparently instead of a physician's assistant.

Nurse Barbara Hughes, a TDCJ nurse present at the Spears hearing, testified under oath that normally inmates have to request diapers. She said that she did not know how this worked at the Powledge Unit, but that she could not find anything in the medical records to discontinue them; she said that it may have simply "fallen off the computer," because she could not find anything saying that Munoz did not need diapers. Nurse Hughes further noted that vancomycin is usually a "last resort" and that Munoz was allergic to another antibiotic, Bactrim, and so the medical staff decided to try two other antibiotics first. She said that by policy, if an inmate refuses treatment, he can be isolated. The nurse added that showers were probably a security issue rather than a medical issue and said that at the Michael Unit, trash could be disposed of in regular containers unless it was soaked with blood or pus.

Chip Satterwhite, a TDCJ regional grievance coordinator also present at the Spears hearing, observed that Munoz had been transported off of the unit for medical care some 144 times. He also provided certified, authenticated copies of Munoz's prison records, which the Court has reviewed with the Plaintiff's permission.

### The TDCJ Records

Munoz's medical records show that a culture was taken for MRSA on August 16, 2006. The following day, Munoz received a prescription for a medication called Cleocin, also known as clindamycin. This is a medication used to treat a wide variety of bacterial infections, and works by stopping the growth of bacteria; it is commonly used in the treatment of MRSA. *See* http://www.webmd.com/skin-problems-and-treatments/understanding-mrsa-detection-treatment.

On August 19, Munoz filed a Step One grievance complaining that he signed a refusal for oral antibiotics and was told that if he signed three such refusals, he would get a disciplinary case.

The response to this grievance was that he had been ordered antibiotics for his staph infection and that it had been explained to him that he could be placed in an isolation cell until the infection is cleared up if he continues to refuse treatment, because this refusal places staff and other inmates into harm's way by subjecting them to an unsafe environment.

In his Step Two grievance, Munoz says that he is not going to be put in "isolation," but rather into a punishment cell. He says that if he has MRSA, he would still be subjecting others to an unsafe environment even if he takes the oral antibiotics, and that if the concern is the protection of others, he should be sent to a medical facility. The response to this grievance was that the issue had been resolved because Munoz had finished taking the clindamycin as well as another antibiotic called doxycycline, and the infection had cleared up. However, the response says, Munoz should be aware that if a staph infection becomes an issue again, refusal of medication could result in assignment to isolation in order to prevent the spread of such infections.

On September 27, 2006, Munoz was seen in the clinic with a complaint that he had fallen out of his wheelchair while playing ball in the rec yard. He was given an ice pack and a note was made that his chart would be referred for a possible X-ray.

On October 19, 2006, Munoz was seen in the chronic care clinic. A number of tests were ordered and he was given counseling concerning his diet and exercise. He complained that there was no diet line and no way to pick and choose what to eat, and so he had to supplement his diet from the commissary. Munoz also complained of problems with his latex Foley catheter.

On January 12, 2007, Munoz filed a Step One grievance complaining that the shower policies were changed without regard for the handicapped inmates. He says that under the new policy, inmates can only shower from 6:30 until 9:30 a.m., which is impossible, and that the water hose could be used as a weapon. The response was that the policy was put in place to eliminate the shower hose/head damage which is continuously occurring. The response says that the policy allows inmates ample time to shower and also allows for emergencies, in that if an inmate soils himself, he will be afforded the opportunity to clean himself by shower if needed. Munoz filed a Step Two

grievance, but it was screened (i.e. returned unanswered) because of inappropriate or excessive attachments.

On January 28, 2007, Munoz filed a Step One grievance complaining that on January 24, he was having "a real bad bowel problem" and needed some diapers. He talked to Officer Ceballos, who called the infirmary for him. After doing so, Ceballos told him that the nurse said that he should come to the infirmary the next morning and get some diapers. Munoz replied that he was having trouble now, not in the morning. Ceballos said that that was too bad, she had already called and that was all that she could do.

About 20 or 30 minutes later, Munoz says, he went back to see Ceballos but she was not there. He asked a male officer if he could see some rank, and the officer looked down the hallway and saw Sgt. Cody at the searchers desk, so the officer let Munoz go talk to Cody.

However, when Munoz did so, Cody said that he could not tell medical personnel anything, because they are employed by the University of Texas Medical Branch and not TDCJ. Cody said that Munoz had to talk to a nurse, but when Munoz did so, the nurse said that Fortner had said not to give Munoz diapers. Munoz says that he received a disciplinary case from Ceballos for failure to obey an order, but that he was never given an order.

The response to this grievance was that Munoz's claim that Ceballos had written a false case on him could not be substantiated. With regard to the medical claim, the response said that Munoz had submitted an I-60 asked for diapers for night use, saying that he had been issued diapers in the past, for a 14-day period, and that Fortner had checked his chart and determined that there was no indication for diapers.

In his Step Two grievance, Munoz says that Ceballos did write a false case against him and that it is not his fault if other officers do not tell the truth. He says that Cody told him to talk to a nurse, but that when he did, he received a case. He says that he really needs the diapers and that he uses blue pads to keep from soiling his sheets; Munoz says that the nurse gave him some blue pads, and he used these to make some diapers.

The response to this grievance was that an investigation found no evidence of staff misconduct or retaliation. Although Munoz complained that he had been denied diapers, the response said, he conceded that he had been given blue pads which he made into diapers. The nurse manager was contacted and reported that Munoz had a chronic care clinic appointment on April 17, at which he could raise his contention that he needed diapers.

There are two mentions of diapers in Munoz's medical records prior to his arrival at the Powledge Unit. On October 14, 2005, an entry from the Estelle Regional Medical Facility says that Munoz "wears depends for urinary incontinence," and on January 3, 2006, an entry from the University of Texas Medical Branch Hospital in Galveston refers to diapers. There is no indication of diapers at the time that Munoz was transferred to the Powledge Unit on March 30, 2006, and the first I-60 inmate request form which Munoz filed after this transfer which mentions diapers is dated September 6, 2006.

He thereafter filed several other requests asking about diapers, until on March 29, 2007, Munoz wrote to Fortner complaining that Fortner had said that there was no indication for diapers, and so for four months, he had been making his own diapers from blue pads. He complains that the unit is not barrier free and again says that he has to have diapers. The response from Fortner says "no indication found - you had not wanted them when you first got here - now suddenly you do - interesting." This is the response which Munoz says was "unprofessional."

On August 4, 2006, Munoz filed a Step One grievance complaining of having to put contaminated trash into the regular trash cans, which he says is a "serious health hazard." The response was that diapers are not considered contaminated trash and can be disposed of in the regular trash can. In his Step Two appeal, Munoz says that the response only addressed diapers, and not other forms of contaminated trash, including gloves, catheters, and leg bags. The response was that "regulated medical waste" includes such things as diapers, gloves, and catheters. Inmates are provided with a black bag for regulated medical waste; this bag is then supposed to be tied up and put into the trash can.

Legal Standards and Analysis

Munoz's first complaint concerns the length of time given to shower. In <u>Nkrumah v. Clark</u>, 977 F.2d 585 (7th Cir., September 24, 1992) (Table), the Seventh Circuit held that a claim that an inmate was given only 15 minutes per day in which to shower failed to show the violation of a constitutionally protected liberty interest. *See also* <u>Sherman v. Lane</u>, --- F.Supp.2d ---, slip op. no. 92-C-2192 (N.D.Ill., March 9, 1998) (unpublished) (available on WESTLAW at 1998 WL 111649) (claim that inmates had to walk to another unit for shower, and were given only ten minutes in which to do so, did not support a constitutional claim); <u>Wishon v. Gammon</u>, 978 F.2d 446 (8th Cir. 1992) (inmate claimed, *inter alia*, that he was allowed 30 minutes per week for shower; grant of summary judgment against him affirmed).

It is thus not clear that Munoz's claim sets out the denial of a constitutionally protected right. More pertinently, however, Munoz has not alleged, nor do the medical records reflect, that he has suffered any adverse consequences at all as a result of allegedly being denied adequate time in which to shower. The Supreme Court has said that for a Section 1983 claim to be viable, the plaintiff must allege an injury. <u>Memphis Community School District v. Stachura</u>, 477 U.S. 299, 308 (1986); *see also* <u>McCord v. Maggio</u>, 927 F.2d 844 (5th Cir. 1991) (plaintiff alleged that he lived in roach-infested, windowless, unlighted cells into which rain water and backed-up sewage leaked; the Fifth Circuit noted that McCord would have to show an injury from these conditions on remand in order to prevail); <u>Davis v. Scott</u>, 157 F.3d 1003, 1006 (5th Cir. 1998) (emphasizing that the plaintiff never alleged a physical injury). In the absence of any allegation or showing that Munoz suffered any kind of injury from the shower policy, his claim is without merit.

Munoz acknowledges that under the policy, he will be allowed to use the main showers at any time if an emergency arises, and that this is generally done. He complains that other inmates or staff members might laugh at him, but this does not show that a constitutional violation has occurred. Munoz also asserts that on one occasion, Officer McKnight did not permit him to use the main showers, but this also does not show the violation of a constitutional right. *See, e.g.*, <u>James v.

Alfred, 835 F.2d 605, 607 (5th Cir. 1988) ("isolated incidents of non-remarkable proportions" are not constitutional violations).

Second, Munoz complains that he was denied diapers. As noted above, he was sent to the Powledge Unit on March 30, 2006, but the first I-60 inmate request which he wrote was in early September, over five months later. Munoz's grievances and inmate requests indicate that he received "blue pads," out of which he makes diapers. His medical records show that he received diapers on two previous occasions, but at the time he was sent to the Powledge Unit, there was no indication in the medical records that he needed diapers, or that he was even getting any.

The Fifth Circuit has held that deliberate indifference to a convicted inmate's serious medical needs could state a civil rights violation, but a showing of nothing more than negligence does not. Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997); Jackson v. Cain, 864 F.2d 1235, 1246 (5th Cir. 1989). However, simple disagreement with the medical treatment received or a complaint that the treatment received has been unsuccessful is insufficient to set forth a constitutional violation. Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985); Norton, 122 F.3d at 293.

Furthermore, malpractice alone is not grounds for a constitutional claim. Varnado v. Collins, 920 F.2d 320, 321 (5th Cir. 1991). Negligent or mistaken medical treatment or judgment does not implicate the Eighth Amendment and does not provide the basis for a civil rights action. Graves v. Hampton, 1 F.3d 315, 319-20 (5th Cir. 1993). The Fifth Circuit has held that the fact that medical care given is not the best that money can buy, and the fact that a dose of medication may occasionally be forgotten, does not amount to deliberate indifference to serious medical needs. Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).

More pertinently, the Fifth Circuit has held that an inmate who had been examined by medical personnel on numerous occasions failed to set forth a valid showing of deliberate indifference to serious medical needs. Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). It should be noted in this regard that medical records of sick calls, examinations, diagnoses, and

medications may rebut an inmate's allegations of deliberate indifference to serious medical needs. Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995).

In Domino v. TDCJ-ID, 239 F.3d 752 (5th Cir. 2001), a inmate who was a psychiatric patient expressed suicidal ideations and the psychiatrist returned him to his cell after a five-minute examination; the inmate committed suicide two and a half hours later. The Fifth Circuit, in reversing a denial of summary judgment by the district court, stated as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Id. Furthermore, the decision whether to provide additional medical treatment "is a classic example of a matter for medical judgment." Estelle v. Gamble, 429 U.S. 97, 107 (1972). And, "the failure to alleviate a significant risk that [the official] should have perceived, but did not," is insufficient to show deliberate indifference. Farmer v. Brennan, 511 U.S. 825, 838 (1994).

Domino, 239 F.3d at 756; *see also* Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

In this case, Munoz has failed to show that Fortner was deliberately indifferent to his serious medical needs, with regard to diapers or otherwise. The fact that Fortner relied on the medical records rather than Munoz's representations to him does not show that Fortner was deliberately indifferent. Munoz received a considerable quantum of medical care, as the medical records make clear. The Fifth Circuit has held that medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference to serious medical needs. Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995); *see also* Spears v. McCotter, 766 F.2d at 181 (inmate who had been examined by medical personnel on numerous occasions failed to set forth a valid showing of deliberate indifference to serious medical needs). Whether or not Fortner acted negligently or with a lack of due care, his medical judgment that Munoz did not need diapers simply does not rise to the level of deliberate indifference to a serious medical need.

Similarly, Munoz points to a response by Fortner to a request as proof of deliberate indifference. This response notes that Munoz did not request diapers when he first arrived at the

unit, but now is, and says "interesting." This could certainly be considered an unusual way to respond to a medical request, whether or not it is, as Munoz says, "unprofessional," but in any event, this response does not itself show that Fortner was deliberately indifferent to Munoz's serious medical needs, as defined by the Fifth Circuit in Domino.

In addition, Munoz has not alleged, nor do the medical records show, that he suffered any adverse consequences as a result of the alleged denial of diapers. His own medical requests indicate that he received blue incontinence pads and was able to fashion diapers out of these. As noted above, Munoz's Section 1983 claim is not viable in the absence of an injury.

Munoz also complains about the treatment which he received for his methicillin-resistant staph infection. He says that he was told to take oral antibiotics, and if he did not do so, he would be placed in isolation. The Federal Bureau of Prisons' guidelines for MRSA infections refer to clindamycin and doxycycline as treatment options and states that factors entering into decisions about where to house inmates with MRSA infections include, among other things, the "ability or willingness of an inmate to follow infection control instructions." *See* http://64.233.167.104/search?q=cache:vrAtoI2yOsUJ:www.bop.gov/news/PDFs/mrsa.pdf+prisons+mrsa+federal&hl=en&ct=clnk&cd=1&gl=us.

The Third Circuit has held that there is nothing unconstitutional about placing inmates infected with MRSA into isolation. Keller v. County of Bucks, 209 Fed.Appx. 201 (3rd Cir., December 22, 2006) (not selected for publication in the Federal Reporter). The infection is contagious and plainly poses at least a potential risk to others, particularly if the infected individual is refusing to comply with the prescribed course of treatment, as Munoz concedes that he was doing. The BOP's guidelines specifically identify the inmate's willingness to follow infection control instructions, which necessarily include taking prescribed antibiotics, as a factor in the housing decision. Munoz has not shown that the fact that he was threatened with placement in an isolation cell if he did not follow the prescribed course of treatment violated his rights under the Constitution of the United States. His claim on this point is without merit.

The fact that there is not a craft shop for handicapped inmates is not a constitutional violation. The Fifth Circuit has held that prison officials may arbitrarily determine whether to provide prisoners with privileges amounting to more than reasonably adequate food, clothing, shelter, sanitation, medical care, and personal safety, subject to the constitutional requirement that substantial differences in treatment must have a rational basis rather than being wholly arbitrary and capricious. Green v. McKaskle, 788 F.2d 1116, 1125 (5th Cir. 1986). However, the Constitution does not require that prisoners, as individuals or as a group, be provided with any and every amenity which some person may think is needed to avoid mental, physical, and emotional deterioration. Newman v. Alabama, 559 F.2d 283, 291 (5th Cir. 1977).

Although Munoz complains that he must dispose of contaminated trash in the regular trash bin, he has failed to show that he has suffered any harm as a result of this. He testified at the Spears hearing that this practice posed a serious health risk to the inmates picking up the trash, but Munoz lacks standing to raise any claims on behalf of these other inmates. *See* Cramer v. Skinner, 931 F.2d 1020, 1024 (5th Cir. 1991); Coon v. Ledbetter, 780 F.2d 1158, 1159 (5th Cir. 1986). This claim is without merit.

The fact that there is only a physician's assistant and not a doctor at the Powledge Unit is not a constitutional violation in the absence of any showing that this fact has resulted in deliberate indifference to Munoz's serious medical needs. Similarly, the fact that there is no counselor from the Physically Handicapped Offender Program at the Powledge Unit does not violate the Constitution. The size of the halls and dayrooms do not set out a constitutional violation in the absence of any allegation that Munoz is unable to get around or otherwise is harmed by this condition, and the contention that the handicapped inmates are not all let out of their cells at once fails to show any violation of the Constitution.

Finally, Munoz also refers to the Americans with Disabilities Act, saying that handicapped inmates must surrender their ID cards to get a shower hose, while non-handicapped inmates do not. He does not allege, however, nor is it clear, that non-handicapped inmates even use shower hoses,

rather than standard shower heads, in taking their showers. In any event, Munoz does not appear to seek any relief regarding this claim under the ADA, other than an award of punitive damages, which are unavailable under the ADA. Barnes v. Gorman, 536 U.S. 181, 189-90 (2002).

To the extent that Munoz complains of the denial of medical supplies under the ADA, his claim fails for a different reason. The pertinent portion of the Americans with Disabilities Act, 42 U.S.C. §12132, reads as follows:

> Subject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity.

The Act specifically provides that the remedies, procedures, and rights set forth in Section 505 of the Rehabilitation Act of 1973, 29 U.S.C. §794a, shall be the remedies, procedures, and rights this title provides to any person alleging discrimination on the basis of disability in violation of Section 12132. See 42 U.S.C. §12133.

To make out a *prima facie* case under the ADA, the Plaintiff must establish: (1) that he is a qualified individual with disabilities; (2) that he was discriminated against by a public entity; and (3) that the discrimination occurred because of his disability. Judice v. Hospital Service District No. 1, 919 F.Supp. 978, 981 (E.D.La. 1996); *see* Blanks v. Southwestern Bell Communications, 310 F.3d 398, 400 (5th Cir. 2002).

In this case, Munoz has failed to show that he was denied diapers *because of* his disability. *See, e.g.*, Davidson v. Texas Department of Criminal Justice, 91 Fed.Appx. 963 (5th Cir., March 19, 2004) (not selected for publication in the Federal Reporter) (affirming dismissal of ADA lawsuit where plaintiff failed to show that he was adversely treated because of his handicap); Shaw v. Texas Department of Criminal Justice, 46 Fed.Appx. 225 (5th Cir., July 17, 2002) (not selected for publication in the Federal Reporter) (inmate denied participation in program for handicapped prisoners because of a notation in his record labeling him a member of a militant organization failed to show an ADA violation because the adverse treatment was not due to his disability). His claim on this point is without merit.

Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees. Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

The term "frivolous" means that a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory. Neitzke v. Williams, 490 U.S. 319, 325-7 (1989). A complaint fails to state a claim upon which relief may be granted if as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Neitzke v. Williams, 490 U.S. 319, 327, (1989), *citing* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); *see also* Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

In this case, Munoz's complaint lacks any arguable basis in law and fails to state a claim upon which relief may be granted. Consequently, his lawsuit may be dismissed as frivolous under 28 U.S.C. §1915A(b). *See generally* Thompson v. Patteson, 985 F.2d 202 (5th Cir. 1993). It is accordingly

ORDERED that the above-styled civil action be and hereby is DISMISSED with prejudice as frivolous. 28 U.S.C. §1915A(b). It is further

ORDERED that any and all motions which may be pending in this civil action are hereby DENIED.

So **ORDERED** and **SIGNED** this **13** day of **December, 2007.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE